1

2                           **UNITED STATES DISTRICT COURT**

3                              **DISTRICT OF NEVADA**

4                                        * * *

5    James M. Reese,                              Case No. 2:19-cv-00512-RFB-BNW

6                        Plaintiff,
                                                  **ORDER re ECF No. 37**
7            v.

8    Gregory Bryan, et al.,
                             Defendants.
9

10

11          Presently before the Court is *pro se*[1] Plaintiff James M. Reese's motion for appointment of

12   counsel (ECF No. 37), filed on September 13, 2021, for which he requested a hearing. Defendants

13   filed an opposition (ECF No. 42) on September 27, 2021. Plaintiff replied on October 5, 2021.

14   ECF No. 43. The Court held a hearing on October 20, 2021, where all parties were present.

15   **I. Background**

16          Mr. Reese's complaint alleges violations of the Eighth Amendment. ECF No. 1 at 1. As

17   his complaint indicates, "Defendants—doctors and administrators at High Desert State Prison—

18   violated Mr. Reese's rights through deliberate indifference to his serious medical needs." *Id*. at 1–

19   2. More specifically, Mr. Reese alleges that Defendants failed to provide him with any "one of the

20   many commercially available drugs" to cure his Hepatitis C despite knowing that not doing so

21   would cause serious risk to his health. *Id*. at 2. And as a result of not receiving proper[2] treatment,

22   Mr. Reese alleges that his Hepatitis C evolved into chronic Hepatitis C that resulted in

23   "irreversible liver damage with incurable cirrhosis[.]" *Id*. at 4, 11. Of note, Mr. Reese alleges that

24

25

26

27          [1] Mr. Reese was previously represented by McLetchie Law. *See* ECF Nos. 29, 31.
            [2] For example, Mr. Reese alleges that Dr. Gregory Bryan, a senior physician at High Desert State Prison

28   Hospital, refused to prescribe him the necessary antiviral drugs to treat his chronic Hepatitis C and, instead,
     prescribed a topical corticosteroid to treat Mr. Reese's skin rashes. ECF No. 1 at 8–9.

1   he contracted the infection in the late 1990s while in Nevada Department of Corrections custody.[3]

2   *Id*. at 3.

3         Mr. Reese now requests a court-appointed attorney, arguing that he lacks the following:

4   (1) access to investigate "all crucial facts" as he is detained at High Desert State Prison, (2)

5   access to the law library and legal supplies, (3) medical expertise to depose expert witnesses and

6   obtain medical reports, and (4) access to discovery obtained by his prior counsel.[4] ECF No. 37 at

7   2–4, 6, 12, 14. Mr. Reese further argues that his medical conditions, including sleeplessness and

8   concentration problems, prevent him from competently representing himself in this complex

9   matter. *Id*. at 6–7. Mr. Reese explains that his case is complex because of the legal and medical

10  issues and the conflicting testimony involved. *Id*. at 8, 11, 14. He also adds that he needs counsel

11  because he requested a jury trial and will be a witness. *Id*. at 5. Finally, Mr. Reese argues that,

12  because his medical records establish damage to his liver from not receiving proper treatment for

13  his Hepatitis C infection, he has a "very high chance of success" if he is appointed counsel. *Id*. at

14  7, 16.

15        Defendants oppose Mr. Reese's request. They argue that he cannot succeed on the merits

16  because his former attorney stated in a letter to Mr. Reese that, because the complaint alleged he

17  has cirrhosis, but an expert witness opined he does not, "our ethical obligations dictate that we

18  cannot allow this representation to stand." ECF No. 42 at 1. In line, Defendants repeatedly argue

19  that given Mr. Reese's prior counsel's representation, any appointed attorney would suffer from

20  the same ethical constraints. *Id*. at 1–4. Finally, Defendants argue that Plaintiff has not shown that

21  exceptional circumstances exist, reasoning that the claims in this case are not "unduly

22  complex[,]" Mr. Reese has shown a "strong ability to articulate his claims," he has access to legal

23  materials, and he is "in the same position as every litigant proceeding *pro se*." *Id*. at 2–3.

24        In his reply, Mr. Reese argues that his medical records, which he attached as exhibits to

25  his motion for appointment of counsel, prove "without any doubt" his deliberate indifference

26  

27      [3] Mr. Reese has been in Nevada Department of Corrections custody or under its supervision since 1977.
ECF No. 1 at 3.

28      [4] It is not clear to the Court whether Mr. Reese has received discovery from his prior counsel, though Mr.
Reese did not raise this issue at the hearing.

1   claim. ECF No. 43 at 1–2, 5. He also repeats his argument that his medical records refute the

2   opinion held by the expert witness retained by his former attorney. *Id*. at 3. Mr. Reese notes that

3   he has not received "any post Hep[atitis]-C testing or treatment for liver damage related

4   problems[,]" including abdominal cramping, vomiting, diarrhea, and sleeplessness. *Id*. at 2.

5   Finally, he repeats his arguments raised in his motion, including, for example, claiming that he

6   requires counsel because of his inability to access legal materials and due to the complexity of the

7   case. *Id*. at 3–4.

8   **II. Discussion**

9       Civil litigants do not have a Sixth Amendment right to appointed counsel. *Storseth v.*

10  *Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). In limited circumstances, federal courts are

11  empowered to request an attorney to represent an indigent civil litigant. For example, courts have

12  discretion, under 28 U.S.C. § 1915(e)(1), to "request" that an attorney represent indigent civil

13  litigants upon a showing of "exceptional circumstances." *Agyeman v. Corrections Corp. of Am.*,

14  390 F.3d 1101, 1103 (9th Cir. 2004).

15      To determine whether the "exceptional circumstances" necessary for appointment of

16  counsel are present, the court evaluates (1) the likelihood of plaintiff's success on the merits, and

17  (2) the plaintiff's ability to articulate his claim *pro se* "in light of the complexity of the legal

18  issues involved." *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v. Escalderon,* 789 F.2d 1328,

19  1331 (9th Cir. 1986)). A court may find that "exceptional circumstances" exist if a claim is either

20  factually or legally complex. *See, e.g., McElyea v. Babbitt*, 833 F.2d 196, 200 n.3 (9th Cir. 1987)

21  (per curiam) (suggesting that a plaintiff's claim concerning the provision of religious books in

22  prison raises "complicated constitutional issues").

23      Neither of these factors is dispositive and both must be viewed together. *Wilborn*, 789

24  F.2d at 1331. It is within the court's discretion whether to request that an attorney represent an

25  indigent civil litigant under 28 U.S.C. § 1915(e)(1). *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir.

26  2009).

27      **A.  Whether Mr. Reese's claims have a likelihood of success on the merits**

28      Here, Mr. Reese's claims have a likelihood of success on the merits.

1    In his motion for appointment of counsel, Mr. Reese included a letter written to him by his

2    former attorney. ECF No. 37 at 37–38. In this letter, Mr. Reese's prior attorney claims that Mr.

3    Reese must voluntarily withdraw the complaint, or she will be forced to withdraw as counsel. *Id.*

4    at 37. She explained that these options are necessary because a medical doctor whom she had

5    retained as an expert witness—Dr. Robert Gish—was given "a copy of [Mr. Reese's] medical

6    records" and opined that Mr. Reese does not suffer from cirrhosis and, therefore, any delay in

7    medical treatment for Mr. Reese's Hepatitis C could not have caused "significant long term

8    damage" to his liver. *Id.*

9    But Dr. Gish's opinion is, at best, a medical opinion that contradicts the findings of Mr.

10   Reese's treating physician Dr. Uday Saraiya, MD, who, as noted in the complaint and medical

11   records attached to Mr. Reese's instant motion, found that Mr. Reese "has cirrhosis of the liver."

12   ECF No. 1 at 10 ("In his report, Dr. Saraiya noted that Mr. Reese had cirrhosis of the liver."),

13   ECF No. 37 at 20 (progress note dated March 7, 2018 where Dr. Saraiya writes that Mr. Reese

14   "will be started on Mavyret as above for 12 weeks as he has cirrhosis of the liver"). Dr. Gish's

15   opinion also appears to contradict a medical report where, on April 2, 20218, a medical provider[5]

16   opines that Mr. Reese has Fibrosis State 4, which indicates "early cirrhosis[.]" ECF No. 37 at 30.

17   Therefore, based on the record before the Court, the opinion of Dr. Gish, who does not appear to

18   have ever treated or examined Mr. Reese, does not invalidate the findings provided by Mr.

19   Reese's treating physician, Dr. Saraiya. And Dr. Saraiya's findings, at least through the progress

20   notes, appear to support both the objective and subjective prongs of a deliberate indifference

21   claim.

22   Additionally, it is unclear to the Court (and the parties) whether Dr. Gish's opinion relied

23   on all of Mr. Reese's (correct) medical records. As Mr. Reese argued at the hearing, there is no

24   affidavit or declaration from Dr. Gish attesting that he believes that Mr. Reese does or did not

25   have cirrhosis. There also is no report authored by Dr. Gish for the Court (or the parties) to

26   consider. Rather, there is only a statement made by Mr. Reese's former attorney representing Dr.

27   Gish's alleged opinion.

28

---

[5] The medical provider only signs their name, and the signature is illegible. See ECF No. 37 at 30.

In sum, assuming that Dr. Gish did, in fact, review all of Mr. Reese's medical records, confirmed that they were correct, and concluded that Mr. Reese did not have cirrhosis, there may be a dispute as to a medical opinion. But even so, such a dispute is common, particularly in a deliberate indifference claim such as this one. And contrary to Defendants' argument, this dispute in medical opinions does not, on its face and given the record before the Court, indicate an ethical dilemma for an attorney who would represent Mr. Reese, or deem this case, as Defendants argue, "a meritless matter." *See* ECF No. 42 at 3.

Accordingly, Mr. Reese has presented a plausible Eighth Amendment claim. *See Turner v. Riaz*, No. 216CV0969MCEACP, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018) ("The Ninth Circuit has indicated that the articulation of a cognizable claim for relief may itself be sufficient to satisfy the "merit" analysis on a motion for appointment of counsel.").

**B.  Whether Mr. Reese has an ability to articulate his claim *pro se* "in light of the complexity of the legal issues involved**

The parties dispute whether Mr. Reese can articulate his claims *pro se* "in light of complexity of the legal issues involved." *See* ECF No. 37 at 2–4, ECF No. 42 at 2–3. While Defendants argue that the "substantive claims involved in this are not unduly complex[,]" the Court disagrees. *Id*. at 3.

In an unpublished decision, the Ninth Circuit held that a plaintiff should be appointed counsel for a deliberate indifference claim stemming from allegations that prison supervisors and physicians failed to properly treat the plaintiff's "'chronic and substantial pain' resulting from spine degeneration[.]" *Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016). The Ninth Circuit reasoned that the plaintiff's "claim will turn on complex medical questions of competing treatment regimens and causation, and likely require the testimony of expert witnesses." *Id*. In another unpublished decision, the Ninth Circuit ordered appointment of counsel in a case also involving a deliberate indifference claim, holding that the claim involved "complex" medical issues relating to the defendants' alleged failure to treat plaintiff's tuberculosis. *Tai Huynh v. Callison*, 700 F. App'x 637, 638 (9th Cir. 2017). The *Tai Huynh* court reasoned that "the record demonstrates that [plaintiff] has little ability to articulate his claims without the benefit of counsel

1   to properly challenge Defendants' expert." *Id.* (citation omitted). Furthermore, other district

2   courts have also found that such deliberate indifference claims are complex. *See, e.g., Turner v.*

3   *Riaz*, No. 216CV0969MCEACP, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018)

4   ("Appointment of counsel is also appropriate because deliberate indifference claims involve an

5   interplay of factual and legal issues that is inherently complex."); *Cataldo v. Madox*, No. 16-CV-

6   2747-JAH-WVG, 2017 WL 2733924, at *2 (S.D. Cal. June 26, 2017) ("Plaintiff's claims of

7   deliberate indifference to medical needs and failure to protect based on medical status will turn on

8   standards of care, causation, and medical treatment issues that may require the testimony of

9   expert witnesses, necessitating expert discovery, a task that is undoubtedly complex."); *cf.*

10  *Hernandez v. Aranas*, No. 218CV00102JADBNW, 2020 WL 569347, at *6 (D. Nev. Feb. 4,

11  2020) (holding that the plaintiff's deliberate indifference claim relating to eye treatment is

12  "relatively straightforward" and "despite [the plaintiff's] medical issues and language barrier, [the

13  plaintiff] has sufficiently demonstrated his ability to articulate his position").

14       Here, as Dr. Gish's letter reveals, Mr. Reese requires not only an expert witness to

15  establish causation, but he also needs the ability to properly challenge his former attorney's own

16  expert as well as Defendants' expert(s). Additionally, while Defendants argue that Plaintiff "has

17  reflected in his filings that he possesses a strong ability to articulate his claims[,]" the Court

18  cannot agree. This is so because the complaint in this case was prepared by an attorney, and there

19  has not been much litigation in this case, making it difficult to judge Mr. Reese's ability to

20  articulate his claims. In addition, Mr. Reese conceded at the hearing that the medical issues in this

21  case were "above [his] head." He also noted in his motion and at the hearing that he has various

22  medical ailments, including difficulties with concentration, sleeplessness, and pain, that would

23  preclude him from litigating this case. *See, e.g.,* ECF No. 37 at 6–7. Such conditions are not

24  conditions that *any* litigant in Mr. Reese's position would encounter.

25       Finally, Defendants argue that Mr. Reese "has access to legal materials citing to numerous

26  cases[.]" But as represented by Mr. Reese in his motion and at the hearing, and which is of

27  concern to this Court, these legal materials were given to him by others residing at High Desert

28

1   State Prison, as requests for legal materials through the prison's paging system involve

2   unreasonable delays or, in certain circumstances, no responses. *See, e.g.,* ECF No. 37 at 4, 6.

3         Accordingly, these circumstances warrant the appointment of *pro bono* counsel in this

4   case.

5   **III. Conclusion and Order**

6         Because the Court will exercise its discretion to appoint counsel and grant Mr. Reese's

7   motion for appointment of counsel, it will refer the case to the Court's Pro Bono Pilot Program to

8   attempt to find an attorney to accept Plaintiff's case. Mr. Reese should be aware that the Court

9   has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C.

10  § 1915(d). *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 298 (1989).

11  Rather, when a court "appoints" an attorney, it can only do so if the attorney voluntarily accepts

12  the assignment. *Id*. **Additionally, Mr. Reese is reminded that until counsel is appointed, he is**

13  **still responsible for complying with all deadlines in his case.** If counsel is found, an order

14  appointing counsel will be issued by the Court, and Mr. Reese will be contacted by counsel.

15        **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Appointment of Counsel

16  (ECF No. 37) is **GRANTED**.

17        **IT IS FURTHER ORDERED** that this case is referred to the Pilot Pro Bono Program

18  adopted in General Order 2019-07 to identify an attorney willing to be

19  appointed as a *pro bono* attorney for Plaintiff. Plaintiff is reminded that he must comply with all

20  deadlines currently set in his case and there is no guarantee that counsel will be appointed. If

21  counsel is found, an order appointing counsel will be issued by the Court, and Plaintiff will be

22  contacted by counsel.

23        **IT IS FURTHER ORDERED** that the Clerk of Court must forward this order to the

24  Pro Bono Liaison.

25        **IT IS FURTHER ORDERED** that Plaintiff's other requests in his Motion for

26  Appointment of Counsel are **DENIED**. If Plaintiff would like to bring other matters to the

27  Court's attention, he is free to do so by way of separate motion. *See* LR IC 2-2(b) ("For each type

28

of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document.").

DATED: October 25, 2021.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE